Herbert SPERBER, Plaintiff
and Appellant,

v.

The GALIGHER ASH COMPANY, a Utah corporation; Henry Doe, a corporation; and John Does I through V, individuals, Defendants and Respondents.

No. 20082.

Supreme Court of Utah.

Nov. 25, 1987.

---

Royal K. Hunt, Salt Lake City, for plaintiff and appellant.

Gordon L. Roberts, David A. Anderson, Salt Lake City, for defendants and respondents.

STEWART, Associate Chief Justice:

Plaintiff Herbert Sperber was hired as a welder by defendant Galigher Ash in 1971 and worked for defendant for eleven years. After four years of employment, plaintiff, upon encouragement from both a company supervisor and the local union president, bid on a position as a stud weld machine operator and was assigned that job. Since the stud welding position only had one station, Sperber, by accepting the position, believed he had seniority and could not be replaced by someone with less seniority. He claims that he was assured by the company supervisor and the local president that he would not be bumped from the position.

In the summer of 1982, Galigher Ash began to reduce its work force due to lack of business. Plaintiff's employment was terminated September 30, 1982. Immediately prior to plaintiff's termination, the company abolished the stud welding position. Sperber contends that the position was abolished because of complaints by union members with more seniority who were being laid off while he retained his position at the stud welding station. In support of this contention, Sperber asserts that although he was told he was being laid off because of lack of work, he had more than a month's work to complete at the station and that defendant's stud welding workload has in fact increased since his dismissal. Furthermore, he alleges that defendant has retained another employee to do stud welding who has more plant seniority than plaintiff but no seniority in stud welding, that the position was reopened, and that he should have been rehired.

Immediately following Sperber's termination, he filed a grievance pursuant to defendant's collective bargaining agreement with the United Steelworker's Union. On or before March 7, 1983, the union withdrew plaintiff's grievance at the third step of the grievance proceedings. On December 23, 1982, Sperber filed a claim before the National Labor Relations Board (NLRB) alleging that the union had failed to represent him fairly. After reviewing this matter, the regional director declined to file a complaint against the union. Plaintiff appealed the director's decision to the general counsel of the NLRB, but the appeal was denied February 16, 1983.

On September 30, 1983, just over six months after the union withdrew his grievance, Sperber brought an action in the Third District Court of Salt Lake County against his former employer, defendant Galigher Ash Co., asserting three causes of

action, namely, breach of an implied covenant of good faith and fair dealing under the collective bargaining agreement between defendant and plaintiff's union, wrongful discharge, and intentional infliction of emotional distress. The district court granted defendant's motion for summary judgment on the ground that the first two claims were barred by the federal statute of limitations applicable to actions for breach of collective bargaining agreements and that the third cause of action failed to state a claim under Utah law.

Sperber asserts that his first two causes of action are claims solely for breach of contract by his employer and do not involve claims against the union and, therefore, should not have been dismissed under the limitation period governing hybrid actions involving both breach of contract and fair representation claims. We disagree.

 Plaintiff's claims for wrongful discharge and breach of an implied covenant are governed by § 301(a) of the Federal Labor Management Relations Act, 29 U.S.C. § 185(a) (1947).[1] Although state courts share concurrent jurisdiction with the federal courts, *see Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–14, 82 S.Ct. 519, 522–26, 7 L.Ed.2d 483 (1962), a claim alleging breach of a labor contract "must be brought under § 301 and be resolved by reference to federal law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) (citing *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). Under federal law, an employee is required to exhaust the grievance and arbitration remedies provided in the collective bargaining agreement between his union and his employer. *Republic Steel Corp. v. Mad-*

dox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

 However, when it is only the union that has power to invoke arbitration, an employee may assert a cause of action for violation of the collective bargaining agreement if he alleges and proves that his union has breached its duty of fair representation in failing to take his grievance to arbitration.[2] *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Likewise, an employee may sue for a breach of the collective bargaining agreement even after his grievance has been submitted to arbitration, if he can show his union breached its duty of fair representation by failing to represent his interests at the arbitration hearing. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Under those circumstances, the employee may sue the employer or the union or both, regardless of the outcome of the grievance or arbitration proceeding. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301, ... but a hybrid § 301/fair representation claim...." *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983). Unless an employee proves that he has not been fairly represented by his union under the collective bargaining agreement, the grievance and arbitration procedures set forth in the collective bargaining agreement are the employee's exclusive remedy.

Accordingly, plaintiff's position that his action is not a hybrid claim since it does not

**1.** Section 301 states in part:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 29 U.S.C. § 185(a) (1947).

**2.** On oral argument before this Court, plaintiff asserted that the requirement that he allege that

the union breached its duty of fair representation should not apply in this case because under the terms of the collective bargaining agreement the union may not be compelled to go beyond the grievance procedure into arbitration. However, even if the arbitration clause is permissive rather than mandatory, the union's refusal to take a claim to arbitration must be in good faith when the union has sole power to invoke arbitration. Consequently, plaintiff must allege and prove that the union failed to represent him fairly.

involve a claim against his union is directly contrary to United States Supreme Court precedent and must be rejected. Sperber asserts that his claim is, nevertheless, sufficient because the union acted arbitrarily and in bad faith by failing to take his grievance to arbitration. He also alleges that the union participated in his wrongful discharge and that when he threatened to sue the union for failing to take his case to arbitration, one of the union officers threatened his life and caused damage to be done to his automobile.

■ Assuming Sperber's allegations are sufficient to establish that the union breached its duty of fair representation, we still must hold that his complaint was properly dismissed because it was untimely filed. In *Del Costello, supra,* the United States Supreme Court held that the limitation period applicable to an employee's suit against his employer for breach of a collective bargaining agreement and against his union for breach of its duty of fair representation is the federal six-month limitation period set forth in § 10(b) of the National Labor Relations Act. *See* 29 U.S.C. § 160(b) (1935). Although that case involved an employee's claims against both his employer and his union, an employee is required to prove the same case whether he sues the union or his employer or both; therefore, the same limitation period must also apply. *See Del Costello*, 462 U.S. at 165–71, 103 S.Ct. at 2291–94.

Sperber had notice no later than March 7, 1983, that the union had withdrawn his grievance. Consequently, his causes of action for breach of the collective bargaining agreement accrued no later than that date. *See Marston v. Laclede Cab Co.,* 571 F.Supp. 1243, 1246 (E.D.Mo.1983) (employee's claims against employer and union accrue on date employee's grievance is finally rejected by union). Because his complaint was filed September 30, 1983, more than six months later, plaintiff's claims against defendant for breach of an implied covenant of good faith and fair dealing and for wrongful discharge are time-barred.

Finally, Sperber asserts that the trial judge erred in granting summary judgment on his third claim for intentional infliction of emotional distress because the issue of whether defendant's conduct constituted intentional infliction is a disputed question of fact that should have been decided by the jury. Plaintiff contends that his claim is based not only on the fact that he was discharged by defendant, but on his allegations that defendant deliberately lied to him about the reason he was being discharged.

■ Even if we accept plaintiff's version of the facts as true, those allegations are insufficient to state a claim for intentional infliction of emotional distress. In *Samms v. Eccles,* 11 Utah 2d 289, 293, 358 P.2d 344, 346–47 (1961), we stated that a claim of emotional distress is actionable if defendant intentionally engages in conduct

> toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

Although Sperber does not allege that Galigher Ash Co. discharged him with the purpose of inflicting emotional distress upon him, he does assert that the company's conduct was "intentional, malicious and in reckless and wanton disregard of the effect of such conduct ..." or, in other words, that Galigher Ash knew that its conduct would cause emotional distress. To state a claim, however, a plaintiff must additionally allege conduct on the part of the defendant that is outrageous and intolerable to the extent that it offends societal standards of morality and decency.

■ Mere discharge from employment does not constitute outrageous or intolerable conduct by an employer. *See Viestenz v. Fleming Companies, Inc.,* 681 F.2d 699 (10th Cir.) *cert. denied,* 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982); *Brenimer v. Great Western Sugar Company,* 567 F.Supp. 218 (D.Colo.1983). Nor does the additional fact that plaintiff was given a false reason for his dismissal rise to the level of outrageous or intolerable conduct necessary for a claim of emotional distress, at least on the facts of this case. Otherwise, any employee who believed his em-

ployer had given a false reason for his termination would have a claim for intentional infliction of emotional distress. Undoubtedly, every employee who believes he has a legitimate grievance concerning his discharge from employment experiences some emotional anguish as a result of that belief.

In addition to his allegations against his employer, plaintiff alleges that the union caused his employer to terminate him and that members of the union threatened his life and damaged his automobile. Although allegations of that nature might be sufficient to state a claim for emotional distress against the union, Sperber's claim is only against his employer and not the union. For that reason, Sperber's claim that he suffered emotional distress because he was fired on a pretext was properly dismissed by the district court.

Affirmed.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.